# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STANLEY BROWN,
     Petitioner,

    vs.

WARDEN, SOUTHEASTERN
CORRECTIONAL COMPLEX,
     Respondent.

Case No. 1:16-cv-647

Dlott, J.
Bowman, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Pickaway Correctional Institution, has filed a

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner

moved to amend/correct the petition, which was granted on June 12, 2017. (Doc. 15, 20). This

matter is before the Court on the petition, as amended, respondent's return of writ, and

petitioner's brief in reply to the return of writ. (Docs. 1, 15, 17, 20).

Also before the Court is petitioner's motion for leave to amend and or supplement his

petition, which is opposed by respondent.[1] (Doc. 32, 33).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's

conviction and sentence:[2]

> {¶ 3} A jury trial was held in September 2011. At trial, the state presented the
> testimony of K.G. and K.G.'s school guidance counselor, Angela Bucheit. K.G.
> testified that in 2003, she was a third grader living with her mother, Brown, and
> her twin sister in an apartment on Gordon Smith Boulevard in Hamilton, Ohio.
> K.G. stated that Brown began to ask her to do him "favors," which consisted of

---

[1] By separate Order issued this date, the undersigned has denied petitioner's motions to stay and motions for an evidentiary hearing. (Docs. 22, 23, 25, 28).

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

him trying to have sex with her. K.G. testified that Brown took her to an abandoned apartment on Gordon Smith Boulevard and forced her to touch his penis and put her mouth on his penis. She also testified that Brown digitally penetrated her vagina and put his penis into her "a little bit" until she started kicking and screaming. After the incident ended, Brown instructed K.G. not to tell her parents or he would hurt them.

{¶ 4} K.G. testified that a second encounter with Brown occurred when she was a fifth grader at Richard Allen Academy. K.G. stated that although she lived with her grandparents, she was visiting her mother at her mother's apartment on Chestnut Street in Hamilton, Ohio while on spring break. K.G. testified that after showering at her mother's apartment, Brown asked her to come to his room and do him a "favor." When K.G. told him "no," he pushed her down on his bed and started to choke her until she put her mouth on his penis.

{¶ 5} K.G. testified that her mother later moved back to an apartment on Gordon Smith Boulevard in Hamilton, Ohio. During one of K.G.'s visits to her mother's apartment, Brown came into the victim's room and asked her to do him a "favor" again. K.G. stated she put her mouth on Brown's penis.

{¶ 6} K.G. did not report these rapes until March 2010, when she was a sophomore in high school. K.G. explained that during her sophomore year, her health class had a guest speaker from Children's Hospital who discussed child abuse and alcohol abuse. During the course of the guest speaker's presentation, K.G. volunteered to read a card prepared by the speaker that discussed a girl who had become dependent upon drugs and alcohol after remaining silent about being raped. K.G. testified that after reading the card, she "got nervous on the inside" and "was starting to cry." After class, K.G. spoke with the guest speaker and with Bucheit about what had happened with Brown. K.G. testified that Bucheit called the police and she gave a statement to detectives later that day.

{¶ 7} On cross-examination, K.G. admitted that prior to 2010 she had not told her mother, grandparents, sister, or the police about what had happened with Brown, and she had not sought medical attention after the rapes occurred. K.G. acknowledged that she had previously had a good relationship with Brown, that she called him "dad," that they said "I love you" to one another, and that when Brown was in jail from June 2004 to May 2006, she wrote him letters. K.G. denied the defense's allegation that she "made [the] whole thing up," but acknowledged that her trial testimony differed from the statement she gave to detectives in March 2010 and from her December 2010 grand jury testimony. K.G. admitted that she never told detectives that she performed oral sex on Brown or that they had engaged in sexual intercourse. Additionally, she admitted that during her grand jury testimony she had identified different locations where the rapes occurred, including a Travel Lodge in Kentucky, and had described the rapes as involving both vaginal intercourse and oral sex. K.G. explained that she was not lying when she gave her statement to the detectives, when she testified

before the grand jury, or when testifying before the jury. Rather, when talking to the detectives, she gave the events in the order she remembered them and additional details surfaced the more she thought about what had happened to her.

{¶ 8} Bucheit was then called to the stand to testify, over the defense's objections, about the statements K.G. made to her after the guest speaker's presentation at the school. Bucheit testified she spoke with K.G. on March 19, 2010, after K.G. was released from her health class. At this time, K.G. told Bucheit that Brown had inappropriately touched her breasts and vagina, and he had raped her by "put [ting] his thing inside of her." When Bucheit asked K.G. what she meant by that statement, K.G. specified that Brown "put his penis in my vagina." K.G. told Bucheit that it had happened more than once, and one of the times it occurred at an apartment on Gordon Smith Boulevard in Hamilton, Ohio.

{¶ 9} Following Bucheit' s testimony, the defense made a Crim.R. 29 motion for acquittal, which was denied by the trial court. Brown took the stand in his own defense and stated that K.G.'s testimony was all lies. He testified that he never digitally penetrated, had oral sex with, or had sexual intercourse with K.G. Brown claimed that since beginning his relationship with K.G.'s mother in 2003, he has never been alone with K.G.—"not even for ten minutes." Brown testified that he had a good relationship with K.G., and when he was in prison from June 2004 to May 2006, he would frequently talk to K.G. and receive "happy" letters from her. At trial, Brown presented a letter, dated January 1, 2009, that had been written by K.G.'s mother. At the end of the letter K.G. had written a short message to Brown, which stated:

> P.S. Hey daddy! I ghott [sic] a boyfriend and his name is Jamonta (JT)!! He so [sic] sweet. Ha. Don't loose [sic] your head daddy. I love you.

{¶ 10} A friend and former neighbor of Brown's, Wilma Buck, testified at trial that she did not believe K.G. had ever stayed overnight with Brown without K.G.'s mother also being present. Brown's niece, Bridgett Brown, testified that K.G. had spent "quite a few" weekends at her house over the years so that K.G. could visit with Bridgett's children. Bridgett stated that she had the opportunity to see K.G. and Brown interact and that K.G. was "ecstatic" about having a dad in her life. She described K.G. and Brown's relationship as that of a father and daughter.

(Doc. 16, Ex. 28 at PageID 211–14).

## II. PROCEDURAL BACKGROUND

### State Trial Proceeding

In December 2010, the Butler County, Ohio, grand jury returned an indictment charging

petitioner with three counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b).  (Doc. 16, Ex. 1).  The three counts stemmed from three alleged instances of sexual abuse of the victim.  Count one was alleged to have occurred between Fall 2003 and Spring 2004, count two between Spring 2004 and Fall 2005, and the third count between Spring 2005 and Spring 2006.

Petitioner, through counsel, filed a request for a bill of particulars, which was provided by the prosecution.  (Doc. 16, Ex. 2, 3).  Petitioner subsequently filed a motion for a more specific bill of particulars, which was also provided by the prosecution.  (Doc. 16, Ex. 4–6).  Petitioner also filed a notice of alibi and motion to dismiss counts two and three of the indictment on the basis that he was incarcerated from June 10, 2004 to May 6, 2006.  (Doc. 16, Ex. 7, 8).  On August 5, 2011, the trial court denied the motion to dismiss.  (Doc. 16, Ex. 10).

The State subsequently filed two amended bill of particulars.  (Doc. 16, Ex. 11, 12).  On September 19, 2011, petitioner filed a "motion for assignment of error," arguing that the bill of particulars were unconstitutional, which was denied by the trial court.  (Doc. 16, Ex. 13, 14).  Petitioner filed a second notice of intent to use alibi defense and the parties stipulated on the dates that petitioner was incarcerated.  (Doc. 16, Ex. 15, 16).  Following a third amended bill of particulars filed by the prosecution, petitioner unsuccessfully moved to dismiss the indictment on the basis that it was "unconstitutional and invalid due to the inexactitude of time in which the alleged offenses occurred."  (Doc. 16, Ex. 17–19).  The State filed a fourth amended bill of particulars specifying the locations of the offenses.  (Doc. 16, Ex. 20).

On September 26, 2011, following a jury trial, petitioner was found guilty of counts one and two of the indictment and not guilty on the remaining count.  (Doc. 16, Ex. 21).  On November 9, 2011, petitioner was sentenced to a total prison sentence of ten years to life.  (Doc. 16, Ex. 23).

## Direct Appeal

On November 8, 2011, petitioner, through counsel, filed a notice of appeal and withdraw

of counsel to the Ohio Court of Appeals. (Doc. 16, Ex. 25). Assisted by new counsel, petitioner

subsequently raised the following five assignments of error in his merit brief:

1. K.G.'s testimony was improperly bolstered by hearsay statements. Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution. (Nov. 9, 2011 Judgment of Conviction Entry; Tr. 32-33; 81-101, 254).

2. The trial court abused its discretion when it refused to give a lesser–included offense instruction. State v. Evans, 122 Ohio St. 3d 381, 2009-Ohio-2974, 911 N.E.2d 889; R.C. 2945.74. (Nov. 9, 2011 Judgment of Conviction Entry; Tr. 241, 254).

3. Mr. Brown's convictions are against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution; Sections 10 and 16, Article I of the Ohio Constitution. (Nov. 9, 2011 Judgment of Conviction Entry; Tr. 254).

4. Mr. Brown's trial was fundamentally unfair because the court tainted the jury venire by telling it that innocent people are not brought to trial. Fifth and Fourteenth Amendments to the United States Constitution; Sections Five, ten and Sixteen, Article I of the Ohio Constitution. (Nov. 9, 2011 Judgment of Conviction Entry; Tr. 32-33; 254).

5. Trial counsel was ineffective for failing to object to the court's improper introductory explanation that tainted the jury pool. Sixth and Fourteenth Amendments to the United States Constitution; Sections 10 and 16, Article I of the Ohio Constitution. (Nov. 9, 2011 Judgment of Conviction Entry; T. 32-33; 254).

(Doc. 16, Ex. 26). On April 22, 2013, the Ohio Court of Appeals issued a Decision and

Judgment Entry overruling the assignments of error and affirming the trial court's judgment.

(Doc. 16, Ex. 28).

On June 6, 2013, petitioner filed a pro se notice of appeal to the Ohio Supreme Court.

(*Id.*, Ex. 29). In his memorandum in support of jurisdiction, petitioner raised the following five

propositions of law:

1. When a criminal defendant is convicted by testimony enhanced by hearsay, the Appellant is deprived of a Fair Trial and the Due Process of Law, guaranteed him by the 5th and 14th Amendments of the U.S. Constitution and Article I, Section 16 of the Ohio Constitution.

2. When a Trial Court refuses to give a required lesser-included offense instruction, which is supported by the evidence, the Court abuses its discretion when it refuses to grant the defendant's request for such and instruction, and therefore denied this Appellant's (sic) of a fair trial and the Due Process of Law, guaranteed by the 5th and 14th Amendments of the U.S. Constitution and Article I, Section 16 of the Ohio Constitution.

3. When the manifest weight of the evidence adduced at trial in support of a conviction is not greater than that which supports an acquittal, the Jury loses its way when convicting an Appellant and violates his Constitutional rights to a Fair Trial and the Due Process of Law, guaranteed him by the 5th and 14th Amendments of the U.S. Constitution and Article I, Section 16 of the Ohio Constitution.

4. When a Trial Court tells a Jury that innocent people are not brought to Trial, the Court effectively destroys the presumption of innocence, and deprives the Appellant of his Constitutional Rights to a Fair Trial and the Due Process of Law, guaranteed by the 5th and 14th Amendments of the U.S. Constitution and Article I, Sections 5, 10 and 16 of the Ohio Constitution.

5. When Trial Counsel fails to object to the Trial Court's improper statement to the Jury that innocent people are not brought to Trial, his performance falls below the Standard of Reasonableness, and the resulting prejudice deprives the Appellant of the Effective Assistance of Counsel guaranteed by the 6th Amendment of the U.S. Constitution and by Article I, Section 10 of the Ohio Constitution.

(Doc. 16, Ex. 30). On September 4, 2013, the Ohio Supreme Court declined to accept

jurisdiction of the appeal. (Doc. 16, Ex. 31).

## Post-Conviction Petition

On May 21, 2012, petitioner filed a pro se petition to vacate or set aside judgment of conviction or sentence. (Doc. 16, Ex. 32). Petitioner claimed he received the ineffective assistance of trial counsel, raising the following two claims in the petition:

1. My trial attorney was ineffective assistance of trial counsel for failing to call these witnesses to the stand. Trial counsel did not call Lillian Brown to the stand who the victim name (sic) in the grand jury testimony.

   My trial att[or]ney was ineffective assistance of trial counsel for failed to call to the stand Detective Mark Nichols to question him about the statement Ms. Green she made in March of 2010 that was different from what she said to the grand jury in December 2010 9 month later. My trial attorney provided ineffective assistance of counsel for not calling to the stand Detective Mark Nichols to question him about the statement Mr. Brown made to him that he told the detective Nichols in his statement that he was incarcerated from 2004 to 2006. Detective did not believes (sic) me and still put me in the indictment. Detective Nichols did not do a thorough investigation so why was it a delay in bringing the indictment when the complaint was made in March of 2010.

2. My trial attorney was ineffective assistance of counsel for not investigate (sic) the apartment the victim claim the rape was in. The victim claim the apartment was vacant but in the fall of 2003 from 9/18/2003 to 10/28/2003 I was in the Hamilton County Center. The court also ordered that I be placed on electronic monitoring from 90 day I had know (sic) job so I had to stay in the house. If I would have left the apartment I would have a violation every apartment in or (sic) building was occupied. The victim was lieing (sic) a vacant apartment yes they are.

(Doc. 16, Ex. 32 at PageID 265–267). Petitioner also filed a supplemental post-conviction petition. (Doc. 16, Ex. 33). On November 6, 2012, the trial court summarily denied petitioner's motions. (Doc. 16, Ex. 34).

Petitioner filed an appeal from the trial court's ruling on December 6, 2012. (Doc. 16, Ex. 36). In his appellate brief, petitioner raised the following three assignments of error:

1. Trial counsel was ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1 Section 10 of the Ohio Constitution, for failing to demonstrate to the jury Defendant was incarcerated during the time frame set out in the specific Bill

of Particulars.

2. Trial counsel was ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1 Section 10 of the Ohio Constitution.

3. Trial counsel was constitutionally deficient by failing to use a material witness at the behest of Defendant, resulting in deprivation of Sixth & Fourteenth Amendments.

(Doc. 16, Ex. 37). On September 30, 2013, the Ohio Court of Appeals reversed the judgment of the trial court, finding that the trial court failed to make required findings of facts and conclusions of law. The appeals court declined to rule on the assignments of error and instead remanded the case to the trial court. (Doc. 16, Ex. 39). On January 7, 2014, the trial court denied the petition as being barred by the doctrine of *res judicata*. (Doc. 16, Ex. 42).

Petitioner filed a notice of appeal. (Doc. 16, Ex. 43). Petitioner raised the same three assignments of error in his appellate brief as he raised in his December 6, 2012 appeal. (*See* Doc. 16, Ex. 44). On January 12, 2015, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 16, Ex. 50). Petitioner filed a motion for reconsideration, which was denied by the appeals court on March 11, 2015. (Doc. 16, Ex. 51, 53).

Petitioner filed a notice of appeal to the Ohio Supreme Court. (Doc. 16, Ex. 54). In his memorandum in support of jurisdiction, petitioner raised the following three propositions of law:

1. Appellant was denied effective, assistance of counsel when court-appointed trial counsel failed to present a full and complete alibi defense for count one. The Court of Appeals violated appellant's rights under the 6th and 14th Amendments of the United States Constitution, as well as had violated Article I, Section 2, 10 and 16 of the Constitution, as a result of the appellate court's failure to reverse appellant's conviction based on ineffective assistance of counsel.

2. Appellant asserts that the Appellate Court made an obvious error or renders an unsupportable decision under the law. When presented with the evidence

showing that trial counsel was clearly ineffective for his failure to present the highly exculpatory alibi evidence in count one to the jury. That on September 18, 2003 Appellant stayed on Gordon Smith Boulevard which every apartment in his building was occupied, and the victim alleged in her Grand Jury testimony under oath that the Rape took place in an abandoned apartment which was two apartment buildings over from his apartment building. Counsel make errors so serious when his performance was deficient and that his performance Prejudiced, and deprived Appellant of a fair trial, and effectiveness of assistance of counsel. The Court of Appeals should have ordered a New Trial in this case when counsel failed to demonstrate and present to the jury that Appellant was incarcerated on September 18, 2003 from the Hamilton County Justice Center. Judge Ethna Cooper recommended that Appellant be placed on electronic monitoring device until his next court date of February 3, 2004.

3. Appellant emphatically requested several times his trial counselor, Mr. Hawkins, Appellant, provide the name of substantial material witness, (Ms. Teresa Withers) who employed with the Hamilton County Justice Center as an intake officer who check inmates in and out of the county jail who was working the day Appellant Brown was arrested and book in on September 18, 2003, her testimony would have effectively rebutted, and / or impeached the credibility of the state`s witness. Appellant asserts that had trial counsel called Ms. Withers to the stand, it would have demonstrate to the jury that appellant was indeed incarcerated at the times of the alleged crimes in the year 2003. See pages 26/27/28 of the transcript. In the specific Bill of Particulars the prosecutor established that the date was September 23, 2003, Where trial counsel failed to demonstrate to the jury for count one at trial. Despite a court order granting defendant motion for a more specified Bill of Particulars Appellant was convicted in between September 23, 2003 and December 31, 2003.

(Doc. 16, Ex. 55 at PageID 577–80). On July 8, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. 16, Ex. 56).

## Application to Reopen Appeal

Meanwhile, on August 6, 2013, petitioner filed an application to reopen his appeal pursuant to Ohio App. R. 26(B). (Doc. 16, Ex. 59). Petitioner argued that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel on appeal. Specifically, petitioner claimed his appellate counsel failed to argue trial counsel's ineffectiveness for failure to raise an alibi defense and the issue of the victim's alleged perjured

grand jury testimony.

On November 20, 2013, the Ohio appeals court denied the application as being untimely. (Doc. 65). Petitioner filed a motion for reconsideration, which was denied. (Doc. 16, Ex. 66, 67).

Petitioner did not appeal the ruling to the Ohio Supreme Court.

### Federal Habeas Corpus Petition

Petitioner commenced the instant federal habeas corpus action on June 15, 2016.[3] (*See* Doc. 1). In his single ground for relief, petitioner contends that he was deprived of the effective assistance of counsel based on trial counsel's failure to conduct a meaningful pretrial investigation and based on counsel's alleged failure to present critical alibi evidence at trial. (*See* Doc. 1 at PageID 5, 16–19).

Respondent has filed a return of writ in response to the petition, to which petitioner has replied. (Doc. 17, 19). According to respondent, petitioner has procedurally defaulted and waived his single ground for relief.

The Court subsequently granted petitioner's motion requesting leave to amend his petition to include additional evidence in support of his claims of actual innocence. (Doc. 15). Noting that respondent had not opposed the motion and had addressed the "additional evidence" in the return of writ, the Court granted the motion. (*See* Doc. 20).

On April 16, 2018, petitioner filed a motion for leave to amend and or supplement his habeas corpus petition. (Doc. 32). Therein, petitioner seeks leave to amend his petition to include the following fourteen claims:

---

[3] On October 20, 2016, the Court adopted a Report and Recommendation to dismiss this action for want of prosecution. (*See* Doc. 7). The Court subsequently vacated the October 20, 2016 Order and Judgment after petitioner belatedly filed objections to the Report and recommendation and paid the required filing fee. (*See* Doc. 11).

A. Ineffective Assistance of Counsel (Trial and Appeal)

1. Counsel was ineffective in failing to request instructions to clarify findings jury had to make in order to convict.

2. That the evidence adduced at trial was not sufficient to convict a criminal defendant beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 304 (1949) thereby establishing "an independent constitutional violation".

3. Failed to investigate adequately and present available facts and witness testimony supporting conclusively supporting petitioner's alibi as to at least count one of the bill of particulars and indictment thereby casting doubt on the unbelievably of the only witness (complainant) credibility resulting in defense's presentation of a weak or unbelievable alibi defense.

4. Failed to pursue and use three separate inconsistent statements (police investigators and witness [Bridget Brown]), grand jury and trial testimony to impeach complainant and case scenario as false and fabricated although having review. Id. At 1590 (citing Ford v. Georgia, 498 U.S. 411, at 423-24(1991)). Proceeding on the merits of the ineffective assistance of counsel claim, the court concluded appellate counsel was ineffective under Strickland v Washington and granted the writ conditioned on the state appellate court's knowledge and aware of the fact.

5. Failed to investigate (or obtain investigator) and interview the landlord or manager of the apartments in Hamilton where the alleged rape occurred to obtain and provide records and or their testimony or affidavit that in fact there was no unoccupied apartment in the building at any time remotely around the time complainant alleges she was raped. The landlord's testimony, rental; records and or affidavit was and still is vital to petitioner's defense and as probative, exculpatory nature at most and would have (or still can at an evidentiary hearing) been used to further undermine the credibility of complainant witness. Counsel (trial) had paid lip service to an alibi defense but never followed through with investigating, confirming these facts and neither had appeal counsel when so informed. This goes to count one allegation.

6. Nor did counsel investigate the fact petitioner was wearing a court ordered electronic device which had GPS tracking that could have pinpointed his exact location at the time period of the purported offense, thus establishing his factual innocence. This goes to the count one allegation.

7. Despite petitioner's urging counsel, counsel failed to investigate potential defense witnesses (Lillian Brown, Eugene Brown, Tyra Green, Ms. Green, Detective Mark Nichols, Teresa Withers) and provide both probative and exculpatory testimony as well as generally undermining the credibility of the

appeal. On cross appeals, the 6th circuit held that respondent's ineffective assistance of counsel served as "cause" to excuse the procedural default whether or not that claim itself had been procedurally defaulted. In the panel's view, it sufficed that respondent had exhausted the ineffective assistance claim complainant.

8. Counsel failed to investigate and produce documentation that petitioner was enrolled in the River City Behavior Modification Program from September 27, 2002 to March 27, 2003.

9. Counsel never investigated and produced documentation proving petitioner was incarcerated from Sept. 18, 2003 until October 28, 2003 and was court to wear electronic monitoring from October 28, 2003 thru February 3, 2004 and obtain those records documenting my every movement and location whereabouts. The prosecution was well aware of these facts which is reflected also in their constant shifting and changing (manipulation) of the offense[s] time frames four times (bill of particulars) until settling on an open window of opportunity to pin the tail on the donkey, so to speak thus teetering rather precariously on the precipice of prosecutorial misconduct and a knowing malicious false prosecution, notwithstanding manipulating the complainant and suborning fabricated- perjury. Circumstantial at best but does raise a seasoned investigative[rs] eyebrow (see for example parts of trial testimony of petitioner and witnesses Wilma Buck and Bridget Brown detailed in Respondent's Return of Writ, Doc #17 filed 02/24/17 Page: 3-5 of 24 Page ID # 1038-1040).

10. Inconsistent and inadequate state corrective process (Rule 26(B), state post-conviction [R.C. 2953.21], and State Supreme Court review). By presenting to the state courts in his application to reopen the direct appeal, even though that application might, under Ohio law have been timed barred. Precisely is the circumstances in petitioner's case. See Carpenter v. Mohr, 163 F.3d 938 (6th Cir. 1990). The Court also recognized miscarriage of justice as exception to procedural default, 529 U.S. at 449.

11. Petitioner states as final claim that it was error and abuse of discretion of the trial court when it refused to give a lesser included offense instruction and on essential elements of the offense which can never be considered harmless and is reversible per se. United States v. Gaudin, 515 U.S.510-12, 514, 520 (1995); Sullivan, supra, 508 U.S. at 283; U.S. v Johnson, 117 S.CT. 1544 at 1550 (1997).

12. The charging instrument's failure to specify predicate crime for alleged offense[s] and changing constantly (4 times) prejudiced the defense and covertly stripping away alibi defenses violated due process right to fair notice as with trial counsel's failure to object and preserve for possible appeal as with appeal counsel's failure to include as a potential assignment of error.

13. The state's refusal to provide indigent petitioner (Brown) with case transcripts and documents to assist in preparing and articulating his appeal[s] to State Supreme Court and postconviction violate Equal Protection Clause. See e.g. Riggins v. Reese, 74 F.3d 732 (6th Cir. 1996).

14. Trial counsel waived and or impermissively stipulated way petitioner's alibi without before investigating the necessary facts to confirm it was indeed true.

(Doc. 32 at PageID 1193–96). Respondent opposes the motion on the ground that claims 1, 2, 4, 5, 7, 10, 11, 12, and 13 of the proposed amended petition do not relate back to the claims presented in petitioner's original petition and are time-barred. With respect to the remaining claims relating to counsel's failure to develop an alibi defense, respondent contends these claims are procedurally defaulted for the reasons stated in the return of writ. Respondent concludes that the amendment would therefore be futile and the motion to dismiss should be denied. (*See* Doc. 33).

## III. PETITIONER'S MOTION FOR LEAVE TO AMEND HIS PETITION (DOC. 32) SHOULD BE DENIED.

As noted above, petitioner moves to amend his habeas corpus petition to include fourteen grounds for relief. (Doc. 32). Respondent opposes the amendment, arguing that the amendment would be futile because petitioner's claims are either procedurally defaulted or time-barred. (Doc. 33). For the reasons stated below, the motion (Doc. 32) should be denied.

Fed. R. Civ. P. 15, which is applicable to this habeas proceeding brought pursuant to 28 U.S.C. § 2254, "allows pleading amendments with 'leave of court' at any time during a proceeding." *See Mayle v. Felix*, 545 U.S. 644, 654–55 (2005). The factors that a court should consider in determining whether to grant leave to amend include "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."

*Coe v. Bell,* 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)); *see also Oleson v. United States,* 27 F. App'x 566, 569 (6th Cir. 2001).  Courts have interpreted Rule 15(a) "as setting forth a liberal policy of permitting amendments to ensure the determination of claims on their merits."  *Oleson*, 27 F. App'x at 569 (internal citations and quotation marks omitted).  Under this liberal standard, a party's delay in seeking amendment is not a sufficient reason standing alone to deny a motion to amend.  *Coe*, 161 F.3d at 341-42; *see also Oleson*, 27 F. App'x at 569.

Under Fed. R. Civ. P. 15(c)(1)(B), an amendment made after the statute of limitations has expired is permissible as long as the amendment relates back to the original pleading by asserting claims "that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  In *Mayle v. Felix*, 545 U.S. 644, 650 (2005), the Supreme Court held that an amended habeas petition filed after the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d) has expired, "does not relate back (and thereby escape [the] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  The Court explained that "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claim."  *Id.* at 659 (internal citation and quotation marks omitted).  Therefore, the Court rejected the petitioner's argument that "relation back" applies in the habeas context for any new claim that stems from the trial, conviction and sentence being attacked in the original petition.  *See id.* at 644.  Rather, "relation back" under Rule 15(c) occurs when the new claim and claims raised in the original petition "are tied to a common core of operative facts."  *Id.*   In so ruling, the Court noted that "relation back [is] ordinarily allowed when the new claim is based on the same facts as the original pleading and only changes the legal theory."  *Id.* at n.7 (internal

citation and quotation marks omitted).

As argued by respondent, petitioner's amended petition was filed after the expiration of the limitations period[4] and therefore, the claims are time-barred unless they relate back to his original petition. In the original petition, petitioner argues that his counsel was ineffective for failing to investigate and present an alibi defense regarding plaintiff's dates of incarceration and supervision. The undersigned agrees with respondent that claims 3, 6, 8, 9, and 14 in petitioner's motion to amend relate back to petitioner's original petition. However, as fully discussed below, petitioner procedurally defaulted and waived his claims concerning trial counsel's failure to adequately investigate and present his alibi defense when the Ohio Court of Appeals found his post-conviction petition was barred by the doctrine of *res judicata*. (*See infra pp.* 18–20, Doc. 16, Ex. 50). Petitioner has also procedurally defaulted his claims of ineffective assistance of appellate counsel by filing an untimely application to reopen his appeal and by failing to appeal the denial of the motion to the Ohio Supreme Court. (*See* Doc. 16, Ex. 65). Accordingly, amending the petition to include claims 3, 6, 8, 9, and 14 would be futile.

The remaining claims presented in the amended petition concern jury instructions, the sufficiency of evidence, the use of inconsistent statement for impeachment, investigation of the apartments in which the offenses occurred, counsel's failure to investigate defense witnesses, the

---

[4] In this case, petitioner's grounds for relief were governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which began to run when petitioner's conviction became final "by the conclusion of direct review or the expiration for the time for seeking such review." Petitioner's conviction became final on December 3, 2013, upon the expiration of the 90-day period for seeking certiorari from the United States Supreme Court following the Ohio Supreme Court's September 4, 2013 entry declining jurisdiction over petitioner's appeal. (*See* Doc. 16, Ex. 31). The limitations period began to run the following day, and expired one year later on December 4, 2014, absent any applicable tolling.

The limitations period was tolled during the adjudication of petitioner's post-conviction petition, until July 8, 2015, when the Ohio Supreme Court declined jurisdiction. (Doc. 16, Ex. 56). Petitioner's untimely application to reopen his appeal and his first federal habeas corpus petition, by contrast, did not toll the limitations period. Accordingly, the limitations period ran from July 8, 2015 until July 8, 2016. Because petitioner did not file his motion for leave to amend his petition until April 16, 2018, the claims are time-barred unless, pursuant to Rule 15(c), his claims relate back to his original petition.

lack of state corrective processes and review, the indictment, and the state's failure to provide transcripts other documents. (*See* Doc. 32). These claims assert new grounds for relief "supported by facts that differ in both time and type from those the original pleading" and therefore do not relate back to the original petition. Therefore, because the remaining claims advanced in the motion to amend are time-barred, amendment of the petition to include these claims would also be futile.[5]

Accordingly, because amendment of the petition would be futile, it is

**RECOMMENDED** that the motion (Doc. 32) to amend be **DENIED**.

## IV.  THE PETITION SHOULD BE DENIED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). In order to satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483

---

[5] The undersigned further notes that petitioner has not offered any explanation for his undue delay in seeking an amendment of the petition in this case. As argued by respondent, petitioner waited more than one year after respondent filed its return of writ to file for leave to amend the petition. Furthermore, the new claims presented in the proposed amended petition were either raised in the state court or relate to alleged errors that should have been known to petitioner during the proceedings in the Ohio courts.

(6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under

the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner procedurally defaulted his single ground for relief by failing to raise his ineffective assistance of counsel claims on direct appeal. Ohio law provides that an issue not raised on direct appeal is barred by the doctrine of *res judicata. See State v. Perry,* 226 N.E.2d 104, 105–06 (Ohio 1967) (syllabus); *State v. Combs,* 652 N.E.2d 205, 209 (Ohio App. 1st Dist. 1994) (holding that *res judicata* stops post-conviction relief for claims that could have been raised on direct appeal). The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata. See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing the procedural default of a claim in a habeas petition where

appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust,* 17 F.3d at 160–61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 151 F.2d at 100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

In his February 11, 2014 appeal from the trial court's denial of his post-conviction petition, petitioner tried to raise for the first time that his trial counsel was ineffective for failing to "(1) fully investigate [petitioner's] alibi defense, (2) present evidence at trial of appellant's incarceration during the time period covered by the indictment, (3) call three witnesses to the stand, and (4) challenge venue regarding one count of rape." (Doc. 16 Ex. 50). The Ohio Court of Appeals found that these claims were barred under the doctrine of *res judicata* because petitioner could have raised the claim on direct appeal. (*See id.* at PageID 524–25). Accordingly, petitioner has procedurally defaulted and waived his single ground for relief unless he can show cause for the default and actual prejudice, or that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *See Hoffner*, 622 F.3d at 495.

Petitioner did argue in his 26(B) application to reopen his appeal that his appellate counsel was ineffective for failing to raise the claims in his direct appeal. (*See* Doc. 16, Ex. 59). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at

488-89.  *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  In this case, petitioner defaulted his ineffective assistance of appellate counsel claims by first failing to file a timely application to reopen his appeal.  In denying the application, the Ohio Court of Appeals found that petitioner's application was untimely and that he failed to provide good cause excusing the untimely filing.[6]  Petitioner committed a second procedural default with respect to this claim by failing to present his ineffective assistance of counsel claims in a subsequent appeal to the Ohio Supreme Court.

Petitioner nevertheless claims that the default of his ground for relief should be excused because he is actually innocent.  Petitioner claims that his innocence is established by several documents and transcripts from his state court trial proceedings, including the prosecution's multiple amendments to the bill of particulars; several documents pertaining to the time periods in which petitioner was incarcerated during the time specified in the bill of particulars; and inconsistent testimony on the part of the victim.  (*See* Doc. 15 at PageID 74; Doc. 19 at PageID 1071).  Petitioner also includes a July 27, 2012 letter from the County of Hamilton Probation Department indicating that he was on electronic monitoring from October 29, 2003 until February 3, 2004.  (Doc. 15 at PageID 86).

To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable

---

[6] Petitioner argued that his pro se status and limited access to the law library should excuse the untimely application. (*See* Doc. 16, Ex. 59 at PageID 659).  However, to the extent that petitioner may contend that his pro se status or limited access to the law library constitute cause for his procedural defaults, it is well-established in the Sixth Circuit that such reasons are insufficient to establish cause to excuse a procedural default.  *See e.g., Rogers v. Warden, Warren Corr. Inst.*, No. 1:10cv397, 2011 WL 1771691, at *6 (S.D. Ohio Feb. 8, 2011) (Litkovitz, M.J.) (Report & Recommendation) ("[t]he petitioner's pro se status, ignorance of the law or procedural requirements, or limited access to legal materials does not constitute cause" to excuse his procedural default of his habeas claims), *adopted*, 2011 WL 1753711 (S.D. Ohio May 9, 2011) (Dlott, J.).  Additionally, to the extent that petitioner claims he was unable to obtain transcripts, district courts have generally found that lack of access to transcripts is not sufficient cause to excuse the procedural default of a Rule 26(B) application.  *See, e.g., Thompson v. Anderson,* No. 1:08–cv–2913, 2010 WL 4025936, at *7 (N.D. Ohio Mar.19, 2010); *Rahe v. Jackson,* No. 2:09–cv–098, 2010 WL 3656051, at *13–14 (S.D. Ohio July 29, 2010); *Grant v. Hudson,* No.1:08–cv–815, 2010 WL 5186432, at *5 (N.D. Ohio Nov.23, 2010);  *Parker v. Bagley,* No. 1:01–cv–1672, 2006 WL 2589001, at *8 (N.D. Ohio Sept.6, 2006).

evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327–28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Petitioner has not met his burden under *Schlup*. As argued by respondent, the "new" evidence put forth by petitioner consists of trial transcripts, motions, and other evidence that was presented at trial. For example, petitioner contends that the victim gave inconsistent testimony at trial and that he was incarcerated for portions of the time span in which he was alleged to commit his offenses. However, at trial the victim was cross examined at length concerning alleged discrepancies between her grand jury testimony and a March 19, 2010 statement taken at the Hamilton Police Department, which petitioner sets forth in support of his claim of actual innocence. (*See* Doc. 16, Trans. at PageID 786–99; Doc. 15-1, at PageID 87). As to the dates during which petitioner was incarcerated, the parties stipulated to these dates at trial and the bill of particulars excluded the incarceration dates from count one.[7] (*See* Doc. 16, Ex. 16). Because

---

[7] The letters from the Hamilton County Justice Center relied on petitioner in the instant action to establish his innocence were in fact admitted into the state court record at trial. (Doc. 16, Trans. at PageID 925–27). Petitioner

this evidence—as well as the other portions of the transcripts, motions, and trial court records—were already presented at trial, the Court is unable to reach the merits of his defaulted claims based on this evidence. *See Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

It does not appear that the July 27, 2012 letter indicating that petitioner was on electronic monitoring from October 29, 2003 until February 3, 2004 was presented at trial. (*See* Doc. 15-1 at PageID 86). In any event, the undersigned finds that this evidence—in conjunction with the other evidence offered in an attempt to establish petitioner's innocence—is insufficient to demonstrate that no reasonable juror would have found him guilty in light of the new evidence. Petitioner contends that he could not have committed the rape charged in count one of his indictment in light of his being incarcerated and/or on electronic monitoring. However, in the final bill of particulars, petitioner was charged with committing a rape between September 23, 2003 and June 20, 2004, excluding September 18, 2003 through October 28, 2003 and June 10, 2004 through June 11, 2004, when he was incarcerated. (*See* Doc. 16, Ex. 19 at PageID 148). Even assuming that petitioner could not have committed the offense when he was on electronic monitoring as petitioner contends, petitioner could have still committed the offense between February 3, 2004 and June 10, 2004 or between June 11, 2004 and June 20, 2004. When balanced with the remaining evidence presented at trial, the undersigned concludes that petitioner has failed to demonstrate that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup* at 329. Petitioner has therefore procedurally defaulted and waived the claims raised in Ground One,

also testified at trial as to the dates during which he was incarcerated at trial. (*Id.* at PageID 880–82).

petitioner's sole ground for relief.

Accordingly, in sum, the undersigned finds that petitioner is not entitled to habeas relief. Having found that petitioner has procedurally defaulted and waived his single ground for relief, the petition (Doc. 1) should be **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's motion for leave to amend (Doc. 22) be **DENIED**.

2. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED.**

3. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[8]

4. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

    *s/ Stephanie K. Bowman*
    Stephanie K. Bowman
    United States Magistrate Judge

---

[8] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

STANLEY BROWN,                                    Case No. 1:16-cv-647
      Petitioner,

                                         Dlott, J.
      vs.                                        Bowman, M.J.

WARDEN, SOUTHEASTERN
CORRECTIONAL COMPLEX,
      Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).